UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| STATE OF LOUISIANA | CIVIL ACTION |
| VERSUS | NO. 13-6724 |
| ZEALANDIA HOLDING COMPANY, INC., ET AL. | SECTION "L" (5) |

## ORDER & REASONS

Before the Court is Plaintiff State of Louisiana's motion to remand. (Rec. Doc. 10). Having considered the applicable law and the parties' memoranda, and after having heard oral argument, the Court now issues this order.

### I.     BACKGROUND

This action arises out of the sales and marketing of memberships in a points-based vacation club. Defendant Festiva Development Group, LLC ("Festivia") marketed memberships in the Festiva Resorts Adventure Club to Louisiana consumers, encouraging them to attend sales presentations at a sales center located in New Orleans, Louisiana. Those consumers who attended an individual or group sales presentation were then offered the opportunity to purchase membership in the Club. Those who purchased a membership entered into individual membership agreements with Festiva. Each member was allotted points, based on their level of membership, which could be used to book accommodations. Approximately 3,380 Club members are residents of Louisiana and, of those, some 122 allegedly lodged a complaint about their membership with Louisiana's attorney general.

On the basis of those complaints, Louisiana filed a *parens patriae* action on December 12, 2013, in the Civil District Court for the Parish of Orleans. It alleges violations of the Louisiana Unfair Trade Practices Act ("LUTPA"), *see* LA. REV. STAT. § 51:1401, and Louisiana's

promotional contests statutes, *see id.* § 51:1721, and it seeks to rescind all 3,380-or-so individual membership agreements and recover amounts paid for each of those memberships. The *parens patriae* authority allows Louisiana to seek injunctive relief, in its own name, against any individual or entity using methods, acts, or practices that violate LUTPA. *See id.* § 51:1407. It further allows relief in the form of civil penalties for any such violation. *Id.* Louisiana may also seek restitution for aggrieved persons. *See id.* § 51:1408. Generally, a claim for restitution has priority over a claim for civil penalties. *Id.* § 51:1407.

On December 18, 2013, the Defendants[1] removed to this Court. (Rec. Doc. 1). In their notice of removal, the Defendants allege federal jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), asserting that the action is either a class action or, in the alternative, a mass action.

## II.   PRESENT MOTIONS

Louisiana now moves to remand. (Rec. Doc. 10). Specifically, it asserts that CAFA does not provide class or mass action jurisdiction for any *parens patriae* action brought by a state for the benefit of its citizens pursuant to the United States Supreme Court's recent decision in *Mississippi ex rel. Hood v. AU Optronics Corp.*, 134 S. Ct. 736 (2014). It also seeks costs and expenses, including attorneys' fees, because it believes there was not a reasonable basis for removal.

---

[1] Defendants include Festiva, mentioned above, as well as Defendants Zealandia Holding Company, Inc., formerly known as Festiva Hospitality Group, Inc. ("ZHC"), Patton Hospitality Management, LLC, formerly known as Festiva Management Group, LLC ("Patton"), Zealandia Capital, Inc., formerly known as Seti Marketing, Inc. ("ZCap"), Resort Travel & Xchange, LLC, formerly known as Festiva Travel & Xchange ("Resort Travel"), Festiva Real Estate Holdings, LLC, formerly known as Festiva Resorts, LLC ("Festiva Real Estate"), Festiva Resorts Adventure Club Members' Association ("Association"), Zealandia Holdings, LLC ("Zealandia Holdings"), Donald K. Clayton, Herbert H. Patrick, Jr., and Richard Hartnett.

The Defendants respond, arguing that CAFA does provide class or mass action jurisdiction for a *parens patriae* action, provided the action is brought under a statute or rule that imposes constraints similar to those of Federal Rule of Civil Procedure 23—for instance, where such a statute or rule binds nonparties to an adverse judgment. (Rec. Doc. 15). They seek to distinguish *Hood* on the basis that its holding was limited to mass actions because the *parens patriae* action was brought under a Mississippi statute or rule that did not allow the state to assert a class. In contrast, they argue that the Louisiana statutes and rules not only *allow* Louisiana to assert a class, but *require* that it do so in order to rescind *all* the individual membership agreements. They further argue that Louisiana statutes and rules for asserting a class are sufficiently similar to Rule 23 to create federal jurisdiction under CAFA. Last, they indicate that the request for costs and expenses, including attorneys' fees, should be rejected.

Following oral argument, the Defendants filed a supplemental response. (Rec. Doc. 25). They explain that they have recently been served in a joinder action brought in state court by 90 plaintiffs under LUTPA. They suggest that the existence of this joinder action "serves as an exemplar of the clear requirement that the [present action] must be recognized as a class action [because] maintenance of the [j]oinder [a]ction in conjunction with the [present action] is detrimental and violative of the law." (*Id*. at 2). Further, they argue that there is a danger of "irreconcilable judgments." (*Id*.).

Louisiana replies that there is no danger of double exposure because "the injunction, judgment[,] or order of the court in an attorney general's LUTPA action shall become evidence in

a LUTPA private action."[2] (Rec. Doc. 27 at 2). It additionally notes that LUTPA is not akin to a class action statute or rule because individuals are required to opt-in (rather than opt-out), because the attorney general is not the individuals' representative, and because LUTPA does not contain any notice requirements. Further, Louisiana argues that treating LUTPA as a class action statute or rule "would effectively convert the [a]ttorney [g]eneral into a private attorney on behalf of the entire class of aggrieved individuals, forcing the state to engage in notices to potential class members and represent them individually." (*Id.* at 4).

### III.   LAW & ANALYSIS

#### A.   Standard of Review

The party removing to federal court has the burden of establishing jurisdiction. *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 797 (5th Cir. 2007). Removal jurisdiction "raises significant federalism concerns" and is strictly construed. *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir.1988). Doubts regarding jurisdiction should be resolved against exercising jurisdiction. *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000). In addressing a motion to remand for lack of diversity jurisdiction, a court looks to the claims in the state court complaint at the time of removal to assess diversity jurisdiction. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). "'[W]hen judges must decide jurisdictional matters, simplicity is a virtue.'" *Hood*, 134 S. Ct. at 744.

CAFA provides a loosened form of diversity jurisdiction for class actions and mass actions. *Id.* at 739–40. A class action is defined as "any civil action filed under rule 23 of the

---

[2] It further argues that, because the joinder action will not be removable, it makes sense for both it and the present action to be managed by the same state court using normal procedural devices.

Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure." 28 U.S.C. § 1332(d)(1)(B). In contrast, a mass action is "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." *Id.* § 1332(d)(11)(B)(i). It is necessary to consider whether either of these provides a basis for jurisdiction over this *parens patriae* action.[3]

### B.    Mass Action

As noted above, a "'mass action' means any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements [of ordinary diversity]." *Id.* "The . . . provision thus functions largely as a backstop to ensure that CAFA's relaxed jurisdictional rules for class actions cannot be evaded by a suit that names a host of plaintiffs rather than using the class device." *Hood*, 134 S. Ct. at 744. Until recently, the United States Court of Appeals for the Fifth Circuit's precedent required that district courts "look to the substance of the complaint—to pierce the pleadings—and to determine the real nature of the claim asserted." *Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 423 (5th Cir. 2008). Under that analysis, a *parens patriae* action would be considered a class action where

---

[3] *Parens patriae* actions are brought pursuant to a sovereign state's right to enforce its sovereign or quasi-sovereign interests in court, as opposed to its proprietary interests or the interest of individual private citizens. *See Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 425–27 (5th Cir. 2008). Authority to bring such actions may exist as a common law right to enforce some law, or it may be expressly granted through state statutory law. *See* Dwight D. Carswell, Comment, *CAFA and Parens Patriae Actions*, 78 U. CHI. L. REV. 345, 347–48 (2011). Here, the parties agree Louisiana has brought a *parens patriae* action.

a state was the sole plaintiff but there were sufficient "real parties in interest" to meet the jurisdictional requirements. *Id.*

However, this precedent was displaced by the recent *Hood* decision, which also concerned a *parens patriae* action. There, the United States Supreme Court concluded that, although "the diversity jurisdiction statute . . . require[s] courts in certain contexts to look behind the pleadings," the real-party-in-interest inquiry does not supersede CAFA. *Hood*, 134 S. Ct. at 745. Accordingly, it held that mass action jurisdiction could not exist over a *parens patriae* action. It reasoned that the inquiry had not been designed for "count[ing] up additional unnamed parties in order to satisfy the mass action provision's numerosity requirement," and that even if it had been designed for that purpose, CAFA's preclusion of mass action claims "joined upon motion of a defendant," 28 U.S.C. § 1332, "demonstrated its focus on the persons who are actually proposing to join together as named plaintiffs in the suit." *Hood,* 134 S. Ct. at 746. Here, it is uncontested that mass action jurisdiction does not exist because Louisiana is the only plaintiff.

### C. Class Action

Having concluded that this is not a mass action, it is necessary to determine whether it is a class action for the purposes of diversity jurisdiction. As previously stated, a class action is defined as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure." 28 U.S.C. § 1332(d)(1)(B). Further, "the term 'class members' means the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action." *Id*. § 1332(d)(1)(D). Accordingly, jurisdiction exists "before

or after the entry of a class certification order by the court with respect to that action." *Id.* § 1332(d)(8).

Here, a proposed or certified class has not been asserted by Louisiana under Rule 23 or the similar state statute or rule. Instead, it has been suggested that it is necessary to "look to evidence outside of the pleadings" to determine whether it is nonetheless a class action. *Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 217 (5th Cir. 1995). In *Hood*, it was noted that the real-party-in-interest inquiry may be used "in certain contexts to look behind the pleadings to ensure that parties are not improperly creating or destroying diversity jurisdiction." 134 S. Ct. at 745. Although the real-party-in-interest inquiry may be used to identify *which* parties should be considered in analyzing whether the parties are sufficiently diverse, it must not been used to identify *how many* parties should be considered in analyzing whether the parties are sufficiently numerous. *Id*. The *Hood* decision also noted that the phrase "named or unnamed" was intentionally included in the class action provision of CAFA and intentionally excluded from the mass action provision. *Id.* at 742.

As noted above, the decision also addressed the significance of CAFA's language requiring that mass action claims must not be "joined upon motion of a defendant," but only the plaintiff. 28 U.S.C. § 1332(d)(11)(B)(ii)(II). It reasoned:

> By prohibiting defendants from joining unnamed individuals to a lawsuit in order to turn it into a mass action, Congress demonstrated its focus on the persons who are actually proposing to join together as named plaintiffs in the suit. Requiring district courts to pierce the pleadings to identify unnamed persons interested in the suit would run afoul of that intent. Moreover, as already discussed, Congress repeatedly used the word 'plaintiffs' to describe the 100 or more persons whose claims must be proposed

> for a joint trial. That word refers to actual, named parties—a concept inherently at odds with the background inquiry into unnamed real parties in interest, who by definition are never plaintiffs. *Congress thus clearly displaced a background real party in interest inquiry, even assuming one might otherwise apply.*

*Hood*, 134 S. Ct. at 746 (emphasis added).

The language requiring that mass action claims must be joined upon motion of a plaintiff, not a defendant, does not find a corollary in the provisions regarding class action claims—but only because it would have been redundant. By their very nature, class action claims are *already* joined upon a motion of a plaintiff in the form of a class allegation. Thus, a class action is necessarily constrained by the action of a plaintiff—that is, "persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action." 28 U.S.C. § 1332(d)(1)(D). Although a class action may exist "before or after the entry of a class certification order by the court with respect to that action," it does not exist before it has even been proposed. *Id*. § 1332(d)(8). Accordingly, the term "unnamed person" necessarily refers to an unnamed member of a proposed or certified class asserted by a plaintiff. It does not refer to someone who is not a member of such a class. To hold otherwise would defeat the purpose of CAFA.[4]

Having established that a class must be asserted for an action to be removable under CAFA, it is necessary to consider whether a *parens patriae* action seeking an injunction and

---

[4] This conclusion is bolstered by the *Hood* decision's observation:

> [I]f Congress had wanted representative actions brought by States as sole plaintiffs to be removable under CAFA on the theory that they are in substance no different from class actions, it would have done so through the class action provision, not the one governing mass actions.

134 S. Ct. at 744–45.

restitution is, by its nature, a class action. Under LUTPA, Louisiana may bring a *parens patriae* action against "any person [that] is using, has used, or is about to use any method, act, or practice declared by [LUTPA] to be unlawful." LA. REV. STAT. §§ 51:1405(A), 51:1407(A). The attorney general may seek both injunctive relief and "a civil penalty against any person found by the court to have engaged in any method, act, or practice in Louisiana declared to be unlawful." *Id.* § 51:1407(A)-(B). LUTPA also allows a court to order restitution be paid by "any party, as may be necessary to compensate any aggrieved person." *Id.* § 51:1408(A). However, "[a]n award of restitution under [LUTPA] has priority over [such] a civil penalty imposed by the court." *Id.* § 51:1407(E). "[F]or the enforcement of [LUTPA], the attorney general may use all other authority and procedures available to persons under the Louisiana Civil Code, Code of Civil Procedure and Revised Statutes." *Id.* § 51:1414.

In *Louisiana ex rel. Guste v. General Motors Corp.*, the Louisiana Supreme Court held that "the [a]ttorney [g]eneral *could* bring a class action for restitution or diminution as a part of his enforcement authority" under the LUTPA. 370 So. 2d 477, 487 (La. 1978) (emphasis added). It also indicated that a class action merely provided "one method" of proceeding under LUTPA. *Id*. In *Guste* an attorney general specifically brought a class action on behalf of a named plaintiff and "all Louisiana citizens similarly situated," seeking both an injunction and restitution. *Id.* at 478. In allowing the class action to proceed, the Louisiana Supreme Court reasoned that LUTPA "entitle[ed] the [a]ttorney [g]eneral to use all procedures in the Code of Civil Procedure, which clearly includes the class action," and that "[w]hether the [a]ttorney [g]eneral may simply bring the class action himself or must authorize a representative aggrieved consumer to do so seems

9

irrelevant." *Id*. at 487. It further suggested that the attorney general was permitted to "cho[ose] to bring a class action . . . for the procedural safeguards it offers." *Id*. at 487 n.4. In contrast, the attorney general here chose *not* to bring a class action, as the attorney general was entitled to do. Considering the language of CAFA—as well as *Hood*—it would be inappropriate to allow the Defendants to alter that choice. Accordingly, a basis for jurisdiction does not exist under either CAFA's mass action or class action provision.

## IV.  CONCLUSION

For the forgoing reasons, **IT IS ORDERED** that the motion to remand is **GRANTED** and the case is **REMANDED**, with each party to bear their own costs.

New Orleans, Louisiana, this 8th day of April, 2014.

_____
UNITED STATES DISTRICT JUDGE